IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TINA L. BANGHART-BROWN

        Plaintiff,

                                  6:15-CV-01883-PK

                                  FINDINGS AND
v.                              RECOMMENDATION


CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Tina L. Banghart-Brown protectively filed this action on October 31, 2011,

seeking judicial review of the Commissioner of Social Security's final decision denying her

application for supplemental security income ("SSI") under Title XVI of the Social Security Act

(the "Act").  This court has jurisdiction over Banghart-Brown's action pursuant to 42 U.S.C. §

405(g) and 1383(c)(3).


Page 1 - FINDINGS AND RECOMMENDATION

Banghart-Brown argues that: (1) the Administrative Law Judge ("ALJ") failed to provide a clear and convincing reason for rejecting her symptom testimony; (2) the ALJ failed to credit Dr. Anthony Glassman, an examining doctor; (3) the ALJ failed to credit the treating mental health providers; (4) the post-hearing opinion of Dr. Mia Schreiner, the treating neurologist, shows the ALJ's decision is not supported by substantial evidence; (5) the Commissioner failed to prove that Banghart-Brown retains the ability to perform "other work" in the national economy; and (6) the ALJ failed to develop the record by not ordering a comprehensive psychological examination, as recommended by Dr. Schreiner. I have considered the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision should be affirmed.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged

in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at

140; *see also* 20 C.F.R. §§ 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed

to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments.

*See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is

"severe" if it significantly limits the claimant's ability to perform basic work activities and is

expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also*

20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities

and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at

141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration

requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20

C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two

inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80

F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or

combination of impairments can be found 'not severe' only if the evidence establishes a slight

abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*,

*quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at

which the ALJ determines whether the claimant's impairments meet or equal "one of a number of

listed impairments that the [Commissioner] acknowledges are so severe as to preclude

substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii),

416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated

Page 3 - FINDINGS AND RECOMMENDATION

in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. § 416.920(a)(4). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g),

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

Page 4 - FINDINGS AND RECOMMENDATION

416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an ALJ's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.*, *quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id.*, *citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery*

*Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Banghart-Brown was born April 27, 1970. Tr. 44.[3] She completed the 11th grade. Tr. 243. According to the evidence of record, prior to her claimed disability onset date of April 30, 2011, Banghart-Brown worked as a fast food worker, an informal waitress, and an import clerk. Tr. 92, 226-27, 230-31, 258-70.

The earliest medical evidence in the administrative record is a November 2009 Mental Health Assessment from the Douglas County Health and Social Services Department when Banghart-Brown came in with complaints of depression and a history of marijuana use. Tr. 331-51. Banghart-Brown reported increased problems with depression and anger after she was attacked by a man with a knife in February 2008 while living in a homeless shelter with her children. Tr. 331. She also reported having panic attacks every few weeks. *Id.* The examiner diagnosed posttraumatic stress disorder ("PTSD"). Tr. 351. After her assessment, Banghart-Brown began attending group therapy sessions, but in August 2010 was discharged for failing to keep appointments with Douglas County Mental Health. Tr. 363-65.

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 11.

In January 2011, Banghart-Brown returned to the Douglas County Health and Social Services Department for panic attacks. Tr. 352-61. That month she also began treatment at Umpqua Community Health Center with Yancy Seamans, Family Nurse Practitioner ("FNP") for chronic low back pain, insomnia, migraine headaches, esophageal reflux, and seasonal allergic rhinitis. Tr. 398-400. She reported using marijuana to help her relax and lower anxiety, and had used Depakote, Zoloft, Paxil, and Prozac for her mental health. Tr. 399-400. FNP Seamans noted in February 2011 that Banghart-Brown complained of having migraines since the age of twelve and found they were triggered by "lights, pollens, perfume, sinus pressure." Tr. 395. He prescribed Phenergan to treat her headaches. Tr. 395. Over the next few months she reported suffering from a migraine about once a week and that the Phenergan would help with nausea, but she would occasionally use alcohol and marijuana for treatment of her migraines. Tr. 393-97.

In March 2011, Banghart-Brown had x-ray imaging of her left knee and back done which showed no acute abnormalities of her knee or spine. Tr. 405-15. She also continued to receive treatment from FNP Seamans for migraines during May 2011, which she complained were occurring two to three times a week. Tr. 386-97. She reported some relief with Phenergan, but still noted headaches. Tr. 389. In May, Banghart-Brown was also examined by neurologist Dr. Mia Schreiner, who diagnosed migraine headaches and "[p]robable bilateral carpal tunnel syndrome and possible left ulnar mononeuropathy." Tr. 584-87. Dr. Schreiner prescribed Topamax for migraine relief. Tr. 587. On June 15, 2011, Banghart-Brown presented at the emergency room complaining of a severe migraine that felt "different" than her normal headaches. Tr. 378-79, 424-25. She denied any vomiting, fever, chills, neck pain, rash or itching, but described photophobia and "thinking without a problem," but being unable "to find

Page 7 - FINDINGS AND RECOMMENDATION

the words." Tr. 424. A CT scan showed "no acute intracranial abnormality." Tr. 425. She was

given normal saline 1 L wide open, Compazine, Benadryl, and Toradol, which improved her

headache, and was sent home. *Id.* After this episode she continued to see FNP Seamans who

opined in July 2011 that Topamax was helpful for migraines. Tr. 374.

In May 2012, Banghart-Brown was seen by Dr. Anthony Glassman who opined that she

suffered from migraine headaches, mild degenerative disc disease of the lumbar spine, and an

"oral history of PTSD." Tr. 450-55. In August 2012, Banghart-Brown reported to FNP Seamans

having more migraines and asked to restart medications after having been off them since

November 2011 because of lack of medical coverage. Tr. 517-20. He noted that she was using

marijuana with "some relief" and was previously using Topamax, which helped reduce her

migraine incidence from "5-6 times per week to 2-3 times per week." Tr. 517-18. Banghart-

Brown continued to see FNP Seamans for complaints of migraines and low back pain for the rest

of 2012. Tr. 490-520. In November 2012 she reported to FNP Seamans that she was having

"different headaches" once a month that were accompanied with a "dull, throbbing, icing

sensation spreading across her forehead." Tr. 491. She denied photophobia, phonophobia,

nausea, and vomiting. *Id.*

In November 2012, Banghart-Brown returned to Douglas County Mental Health and was

examined by Lisa Corallo-Conner, medical assistant ("MA"), for increased panic attacks. Tr.

465-76. She reported that she "refus[es] to leave her home due to fear of having a panic attack"

and that after a panic attack she usually has a migraine. Tr. 466. MA Corallo-Conner

recommended individual and group therapy, medication management, and case management

services at the discretion of her primary clinician. Tr. 476.

In January 2013, she began treatment with William Morris, psychiatric-mental health nurse practitioner ("PMHNP"), for complaints of PTSD and anxiety, and in March 2013, began individual therapy sessions with Jessica Hansen, licensed professional counselor ("LPC"). Tr. 537-43, 545-79. PMHNP Morris prescribed Alprazolam for Banghart-Brown's panic attacks and Wellbutrin to help her drive. Tr. 542, 569. Banghart-Brown reported that Wellbutrin helped her focus, and continued to see PMHNP Morris and LPC Hansen throughout 2013. Tr. 545-72.

In January 2014, Banghart-Brown began care with Skyler Meyer, nurse practitioner ("NP"), who noted she was "[h]ere to establish care" because she was "[u]nhappy" with her previous provider. Tr. 605. NP Meyer assessed Banghart-Brown with severe depression, and reported she had no abnormalities except being poorly kept and obese, noted that she reported daily headaches, and that she appeared "anxious and irritable." Tr. 604-09. That same month Banghart-Brown began seeing Dr. Schreiner again and was prescribed an increased dose of Topamax and given a referral for an MRI for her continuing migraine headaches. Tr. 580-82. On February 12, 2014, Banghart-Brown had an MRI done on her brain which showed "no intracranial abnormality" and "mild maxillary sinus disease which may be chronic; however, sinusitis can trigger recurrent headaches," as reported by Dr. Philip F. Benedetti. Tr. 588-89. Additionally, in February 2014, Banghart-Brown complained to PMHNP Morris that she was having more anxiety and panic attacks. Tr. 575-76. PMHNP Morris opined that it was not clear whether her current medications were helping and suggested changes to her medications, but also found her agoraphobic symptoms were "somewhat selective." Tr. 575-77.

On March 5, 2014 Banghart-Brown had a hearing before the ALJ. Tr. 40-104. She testified to suffering from PTSD and migraines where she throws up at least eight or nine times a

month. Tr. 58- 61, 84. She also testified to taking Wellbutrin, Topamax, Hydroxyzine and

Propranolol for her PTSD; Phenergan, Compazine, and Nutropin for migraines; and Flexril,

Zantac, and Prilosec for "other things." Tr. 72. Additionally, Banghart-Brown testified to using

marijuana to help relieve her migraines, but that she stopped a week before the hearing because

of her daughter's substance abuse. Tr. 55-56. Without marijuana Banghart-Brown said she treats

her migraines by watching TV until she "can't keep [her] eyes open" and "[a]s far as the migraine

goes, praying that it will end." Tr. 68.

The ALJ asked vocational expert ("VE") Mark A. McGowan to consider an individual of

Banghart Brown's age, education, and work experience, whose

> maximum physical exertional capability is light; who's (sic) maximum mental capability
> is engaging in unskilled; repetitive; routine work; who will have no contact with the
> public; who will have occasional contact with supervisors; and coworkers; who will be
> off task at work seven percent of the time; but still meet minimum production
> requirements; and who will be absent from work one time per month

and then asked the VE whether that person could "perform any of the previous work of

[Banghart Brown]." Tr. 93. The VE stated such limitations would prevent such a person from

any of the past work. *Id*. The VE testified that other jobs existed in the national economy for a

person with those characteristics could perform including the positions of mail clerk and office

helper. *Id*.

On March 28, 2014, the ALJ denied Banghart-Brown's application for SSI. Tr. 16-34.

Banghart-Brown timely requested review of the ALJ's decision on April 29, 2014, and the

Appeals Council denied her request on August 3, 2015. Tr. 1-3, 11. In consequence, the ALJ's

decision of March 28, 2014 became the Administration's final order for purposes of judicial

review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Banghart-Brown has not engaged in substantial gainful activity since October 31, 2011, the application date of her SSI application. Tr. 18. He therefore proceeded appropriately to the second step of the analysis.

At the second step, the ALJ found that Banghart-Brown's medical impairments of "degenerative disk disease of the lumbar spine, major depressive disorder, and panic disorder" were "severe" for purposes of the Act. Tr. 18-20. The ALJ also noted that Banghart-Brown had the nonsevere impairments of migraine headaches, left knee pain, panic disorder, and attention deficit-hyperactivity disorder ("ADHD"). Tr. 18-20. The ALJ found despite Banghart-Brown's complaints of migraine headaches she was able to alleviate her headaches with marijuana, and overall had not been compliant in following a treatment plan, suggesting her headaches are not as limiting as she has alleged. Tr. 19. With respect to her left knee pain, the ALJ noted that a March 2011 radiological image of Banghart-Brown's left knee showed " only 'very mild' degenerative changes" in the left knee joint, and between 2011 and 2014 Banghart-Brown "demonstrate[d] a normal gait." *Id*. For Banghart-Brown's panic disorder the ALJ noted that MA Corallo-Conner found Banghart-Brown's panic disorder was related to stimuli that trigger memories from her past trauma, and therefore should be attributed to PTSD. Tr. 20. With respect to her ADHD, the ALJ found that MA Corallo-Conner opined that Banghart-Brown denied involvement in special classes or problems in school. *Id*. Additionally, in July 2013,

PMHNP Morris ruled out ADHD and overall the ALJ found no evidence that Banghart-Brown received treatment for ADHD. *Id.* Because the impairments caused by Banghart-Brown's degenerative disc disease of the lumbar spine, major depressive disorder, and panic disorder were deemed severe, the ALJ properly proceeded to the third step of the analysis. Tr. 18-20.

At the third step, the ALJ found that none of Banghart-Brown's impairments was the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. Tr. 20-23. Specifically the ALJ found that Banghart-Brown's degenerative disc disease did not meet listing 1.04 (disorders of the spine) because the evidence of record did not establish the requisite nerve root compression "accompanied by sensory or reflex loss." Tr. 20. The ALJ also found that Banghart-Brown's major depressive disorder and panic disorder did not meet listings 12.04 and 12.06 (affective disorders and anxiety related disorders, respectively, both requiring either satisfaction of the listing's "paragraph A" and "paragraph B" criteria or satisfaction of the listing's "paragraph C" criteria) because the record did not establish, in connection with each listing's paragraph B criteria, more than moderate restrictions in Banghart-Brown's activities of daily living, more than marked difficulties in Banghart-Brown's social functioning, more than moderate difficulties in concentration, persistence, or pace, or any episodes of decompensation of extended duration. Tr. 20-22. Additionally, the record did not establish, in connection with the listing 12.04's "paragraph C" criteria that Banghart-Brown requires a highly supportive living arrangement to satisfy the "C" criteria, and in connection with listing 12.06, that Banghart-Brown is completely unable to function independently outside the area of her home. Tr. 22. The ALJ therefore properly conducted an assessment of Banghart-Brown's residual functional capacity.

Regarding Banghart-Brown's RFC, the ALJ found that at all material times:

Page 12 - FINDINGS AND RECOMMENDATION

> [Banghart-Brown had] the residual functional capacity to perform light work as
> defined in 20 C.F.R. § 416.967(b) except she is limited to work that requires her
> to perform routine and repetitive work in the unskilled category. She can have
> occasional contact with coworkers and no contact with general public. She is
> likely to be off task at work 7% of the time but still be able to meet minimum
> production requirements of the job. She is likely to miss one day of work per
> month.

Tr. 23. In reaching these findings, the ALJ considered all of the material objective medical evidence in the record bearing directly upon Banghart-Brown's asserted impairments, as well as Banghart-Brown's own statements regarding her symptoms. Tr. 23-32.

At the fourth step of the five-step process, the ALJ found that Banghart-Brown was unable to perform her past relevant work. Tr. 32.

At the fifth step, the ALJ found in light of Banghart-Brown's age, education, work experience, and RFC that there were jobs existing in significant numbers in the national and local economy that she could perform. Tr. 32-33. Specifically, the ALJ found that Banghart-Brown could perform the requirements of representative light, unskilled occupations such as mail clerk and office helper. Tr. 33. On that basis, the ALJ concluded that Banghart-Brown was not disabled as defined in the Act since October 31, 2011, the date the application was filed. Tr. 34.

## ANALYSIS

Banghart-Brown challenges the Commissioner's conclusion of her ability to perform other work in the national economy on several grounds. Banghart-Brown argues: (1) the ALJ improperly rejected her symptom testimony; (2) the ALJ improperly discounted the medical opinion of Dr. Glassman; (3) the ALJ erred by failing to provide germane reasons for rejecting "other source" opinions from two mental health providers; (4) the ALJ's decision was not supported by substantial evidence given the additional evidence submitted to the Appeals

Council; (5) the ALJ erred in finding she had the ability to perform "other work" in the national economy; and (6) the ALJ failed to develop the record by not ordering a comprehensive psychological examination.   Although Banghart-Brown does not expressly challenge the Commissioner's assessment of her residual functional capacity, her argument concerning her ability to retain the ability to perform "other work" in the national economy can plausibly be construed as suggesting that the ALJ failed to consider medical evidence of her migraine headaches in making that assessment, and that in consequence the Commissioner failed to meet her burden at the fifth step of the five-step process.   I address each of Banghart-Brown's arguments, express and constructive, in turn.

### I. Banghart-Brown's Symptom Testimony

Banghart-Brown contends the ALJ failed to provide a clear and convincing reason for discrediting her symptom testimony.  Pl.'s Br. 14-17.

If "there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Examples of clear and convincing reasons include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies either in the claimant's testimony or between his testimony and his conduct, daily activities inconsistent with the alleged symptoms, a sparse work history, testimony that is vague or less than candid, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of. *Tommasetti v. Astrue,* 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter v. Astrue,* 504 F.3d 1028, 1040 (9th Cir. 2007); *Light v. Social Sec. Admin.,* 119 F.3d 789,792 (9th Cir. 1997).

Here, the ALJ found Banghart-Brown's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," yet her statements "concerning the intensity, persistence and limiting effects of these symptoms are not fully credible." Tr. 25. The ALJ provided numerous specific reasons to support this conclusion.

First, the ALJ found Banghart-Brown's activities of daily living were inconsistent with her allegations of "severely limiting symptoms," noting that she could take care of her own hygiene, cook simple meals, feed her cats, fold laundry, watch TV, play video games, sew quilts, had the ability to shop with her husband, attend therapy sessions, pay bills, and help her children with homework. Tr. 25, 250-57, 272, 506, 518. The ALJ also found Banghart-Brown was "primarily responsible for upbringing of her teenage children" overall finding that "her claims that her children are self-sufficient are only partially credible." Tr. 25.

Here, Banghart-Brown argues she has been found to have marginal hygiene on occasion, noting PMHNP Morris's notes from January 29, 2013, February 22, 2013, and September 12, 2013. Pl.'s Br. 15, citing Tr. 541-42, 553, 569. Although the record reflects Banghart-Brown occasionally had marginal hygiene, the ALJ's finding was reasonable given reports from Banghart-Brown and her

Page 15 - FINDINGS AND RECOMMENDATION

husband Danny Brown that she could care for her hygiene, and reports from her doctors finding that she was well dressed and "appropriately groomed." See e.g., Tr. 251, 273, 353, 488, 563, 566, 586. Additionally, although Banghart-Brown argues that her children and husband do all of the housework, her testimony at the March 5, 2014 hearing was that although chores in the household were to be shared, she "end[s] up doing it all." Tr. 68, 251. Although variable interpretations of a claimant's testimony may exist, the ALJ's interpretation of a claimant's testimony will be upheld if it is a reasonable interpretation supported by substantial evidence. See *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ's interpretation of the evidence is reasonable such that this court finds no error.

Next, the ALJ found Banghart-Brown had a poor work history, finding that she held four different jobs since 1998, none of which lasted more than nine months, and her earning records between 2000 and the application filing date showed she had not earned above substantial gainful activity ("SGA") level during seven of those ten years. Tr. 26, citing Tr. 224-29, 243, 258, 305. An ALJ may consider a claimant's poor work history when making a credibility determination. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Indeed, the record reflects Banghart-Brown had a poor work history, which the ALJ reasonably relied upon to support his credibility determination. Therefore, there is no error.

Third, the ALJ found the objective imaging and independent testing did not support Banghart-Brown's allegations of disability. Tr. 26. With respect to Banghart-Brown's complaints of back pain, the ALJ noted numerous medical reports from Dr. Schreiner, Dr. Glassman, FNP Seamans, PMHNP Morris, and Dr. Diwaker Agarwal who found she had mild degenerative disc disease, normal gait, coordination, and full motor strength. First, the ALJ cited a March 2011 x-ray

Page 16 - FINDINGS AND RECOMMENDATION

image, which showed only mild degenerative disc disease of the lumbar spine. Tr. 26, 437. Additionally, in May 2011, Dr. Schreiner reported that Banghart-Brown had normal gait and coordination, and full motor strength. Tr. 26, 586-87. Later in May 2012, Dr. Glassman reported Banghart-Brown had a normal gait and other than decreased lumbar spine flexion, she had full range of motion in lumbar spine extension, bilateral rotation, and bilateral flexion. Tr. 26, 453. FNP Seamans found Banghart-Brown had a normal gait in August 2012, and Dr. Agarwal, when reviewing an October 2012 x-ray of Banghart-Brown's lumbar spine, reported her lumbar spine showed alignment was within normal limits. Tr. 26, 513, 530. Finally, PMHNP Morris's reports from February 2013 through December 2013 opined that Banghart-Brown had normal gait and muscular strength, and motor examinations performed by Dr. Schreiner in May 2011[4] and January 2014 also found she had a normal gait, full motor strength, and normal tone in all four extremities. Tr. 26, 547, 558, 563, 569, 582, 586-87.

As for Banghart-Brown's mental symptoms, the ALJ found they were not as severe as she alleged, noting medical reports from FNP Seamans, Dr. Schreiner, Dr. Glassman, PMHNP Morris, Barbara Jacobson, FNP, and Skyler Meyer, FNP. Tr. 27. Between January 2011 and July 2011, FNP Seamans reported that Banghart-Brown was talkative, tangential, and exhibited normal affect. Tr. 26, 376, 384, 387, 396, 401. In May 2011, Dr. Schreiner reported that Banghart-Brown was "alert, cooperative, and oriented," and shows "normal" and "articulate" speech, and in May 2012, Dr. Glassman found Banghart-Brown "appears well developed, well nourished, and in no apparent distress." Tr. 26-27, 453, 586. In August 2012 and December 2012, reports from FNP Seamans

---

[4] The court notes that the ALJ incorrectly lists the date of Dr. Schreiner's report as March 2014, instead of May 2011. Despite this error, it does not change this court's findings regarding the ALJ's overall analysis of Banghart-Brown's symptom testimony.

opined that Banghart-Brown appears "alert, oriented to person, place, date, and time, calm, and cooperative with normal mood and affect, intact judgment, intact insight, and intact memory." Tr. 484, 492, 495, 504, 510, 513, 519. Additionally, in December 2012, FNP Jacobson, described Banghart-Brown as "pleasant, appropriately groomed, alert, oriented, calm, cooperative with normal mood and affect, intact judgment, intact insight, intact memory, and in no apparent distress." Tr. 488. In February 2014, FNP Meyer reported that Banghart-Brown was alert, oriented and history was "negative for depression, anxiety, or change in sleep habits," and in March 2014, Dr. Schreiner found Banghart-Brown was "well dressed, alert, oriented, cooperative and in no acute distress" and "shows intact attention span, concentration, and judgment, and normal memory." Tr. 586, 601. "Although lack of medical evidence cannot form the sole basis for discrediting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Here, the ALJ considered the lack of medical evidence as one of numerous reasons to discredit Banghart-Brown's symptom testimony, and his findings are supported by the record. Therefore, this court finds no error.

Fourth, the ALJ found Banghart-Brown was not compliant with her treatment plan for a significant period after the filing date of her application for SSI, suggesting her symptoms were not as limiting as she alleged. Tr. 27. The ALJ noted that Banghart-Brown did not show up or cancelled appointments multiple times in August 2010, January 2014, and March of 2014. Tr. 27, citing Tr. 363, 574, 578. Additionally, the ALJ noted that Banghart-Brown had not seen a doctor since November 2011 and was not refilling prescribed medications, alleging a lack of money. Tr. 27. The ALJ found her lack of treatment "cannot be contributed to financial concerns, since [Banghart-Brown] was able to find the money to support her marijuana, cigarette, and alcohol addiction." Tr.

27. In making this finding, the ALJ noted that in May 2012 Banghart-Brown stated that marijuana gave her 80% axial pain relief, and in August 2012 and December 2012 she admitted to using marijuana and drinking alcohol once or twice daily. Tr. 27, citing Tr. 450, 487, 509.   The ALJ further found that Banghart-Brown admitted in January 2014 that she rarely takes Xanax and Buspirone, and in in February 2014 felt that Buspar was not helpful, yet noted problems when she missed doses of Buspar. Tr. 27, citing Tr. 577, 580. Overall, the ALJ concluded that Banghart-Brown "would rather use illicit drugs and drink alcohol than comply with refilling her medications." Tr. 27.

I find this reason for discrediting Banghart-Brown's testimony is not supported by substantial evidence. Although Banghart-Brown admits to using marijuana and alcohol to treat her migraine headaches, there is nothing in the record to support the ALJ's finding that she had a marijuana, cigarette, and alcohol addiction.   Additionally, Banghart-Brown was approved for a medical marijuana card, which suggests her marijuana use might be compliant with her treatment plan. Tr. 509. However, under *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008), the court need not uphold every reason the ALJ discredited the plaintiff, as long as substantial evidence exists to support the ALJ's decision. Here, the ALJ provided numerous other reasons for finding Banghart-Brown not entirely credible, reasons that are supported by the record. An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Here, the ALJ's error is harmless because he has provided numerous other clear and convincing reasons for discrediting Banghart-Brown's symptom testimony. Therefore, this court finds no error.

With respect to her mental health treatment, the ALJ found Banghart-Brown's treatment plan had been relatively effective in controlling her symptoms when she is on medication. Tr. 28. *See, e.g., Warre v. Comm'r,* 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") Specifically, the ALJ noted that PMHNP Morris found Banghart-Brown's stress was situational and overall found she showed "only mild depressive symptoms" and "normal speech and intact thought process and memory. " *Id.,* citing Tr. 568-69. In March 2013, Banghart-Brown reported somewhat improved sleep and denied feeling any side effects from her medications. *Id.* Over the course of 2013 and 2014, the ALJ noted that although Banghart-Brown reported less focus and poorer attention when she missed her medications, she also reported improved memory, attention span, and concentration with Wellbutrin. *Id.* Additionally, the ALJ noted that PMHNP Morris found Banghart-Brown had an "intact thought-process and memory, cooperative attitude, and appropriate and mood congruent affect" in July 2013, was "open and cooperative" and appeared calmer in December 2013, and at a January 2014 interview, she even reported her anxiety was improved on Propranolol and denied depressed mood, suicidal thoughts, or crying spells. *Id.,* citing Tr. 546, 558, 580-81. The ALJ's findings are supported by the record, such that this court finds no error.

Next, the ALJ found Banghart-Brown had "misrepresented facts relevant to the issue of disability," specifically, that she reported that other than marijuana, she does not use any recreational drugs or drink alcohol, despite continuing to use alcohol. Tr. 28, citing Tr. 452. Additionally, the ALJ found Banghart-Brown exaggerated her back symptoms to "increase the chance of obtaining

benefits," finding that Dr. Agarwal stated that "the lumbar lordosis is moderately exaggerated and appears worse during extension view." Tr. 29, citing Tr. 530.

This court finds neither of these reasons persuasive. An independent review of the record shows Banghart-Brown did report her occasional alcohol use to her physicians. See e.g., Tr. 399, 452, 470, 487, 506, 509, 540, 606, 617. Additionally, the ALJ incorrectly interpreted Dr. Agarwal's report that "the lumbar lordosis is moderately exaggerated" to mean that Banghart-Brown exaggerated her symptoms. Tr. 29, citing Tr. 530. Although this court finds these reasons not persuasive, the ALJ's overall credibility determination is upheld. See *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004) (The ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld.)

Finally, the ALJ found Banghart-Brown's pain was not as severe as she alleged because there were inconsistencies in the record with respect to her marijuana use and evidence that "she does not need to smoke marijuana if she chooses not to." Tr. 29. Specifically, the ALJ noted Banghart-Brown reported being approved for a medical marijuana card to FNP Seamans in August 2012, and reported receiving the card in November 2012, yet in in January 2013 told PMHNP Morris that she was approved for the marijuana card but did not have the money to pay for it. Tr. 29, 475, 509. Additionally, the ALJ noted that Banghart-Brown testified at the March 5, 2014 hearing that she quit using marijuana because of her daughter's substance abuse problem, which the ALJ found suggested that Banghart-Brown's pain was not as severe as alleged. Tr. 56. See *Burch v. Barnhart*, 400 F.3d 676, 681 (An ALJ can use a claimant's conservative course of treatment to discredit his or her symptom testimony.) These inconsistencies and Banghart-Brown's decision to stop using marijuana

Page 21 - FINDINGS AND RECOMMENDATION

are both supported by the record. Therefore, this court finds the ALJ's findings reasonable and there is no error.

Here, the ALJ provided numerous clear and convincing reasons, supported by substantial evidence, for discrediting Banghart-Brown's symptom testimony. I find the ALJ reasonably cited inconsistencies in Banghart-Brown's testimony, conduct, and medical records, to support his reasons for discrediting her testimony. While variable interpretations of this evidence may exist, the ALJ's analysis was reasonable, such that it must be upheld. *Batson*, 359 F.3d at 1198 (9th Cir. 2004). Therefore, I find the ALJ reasonably discredited Banghart-Brown's symptom testimony.

## II.    Medical Opinion of Examining Physician, Dr. Anthony Glassman

Next, Banghart-Brown contends the ALJ improperly discounted the medical opinion of Dr. Glassman, who found Banghart-Brown would "need the ability to lay down in a dark quiet room from time to time" because of her migraines. Pl.'s Br. 13-14, citing Tr. 455.

An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Here, the ALJ gave "little weight" to Dr. Glassman's opinion that Banghart-Brown had the severe condition of migraine headaches and would need the ability to lie down in a dark quiet room from time to time. Tr. 30, citing Tr. 455. The ALJ found Banghart-Brown's treatment notes with regard to migraine headaches were "non-descriptive" because they "contained no objective findings" and showed "a significant period of incompliance in taking the prescribed medications." *Id.*, citing

Page 22 - FINDINGS AND RECOMMENDATION

Tr. 367-416, 424, 436, 480-82, 491, 511-12, 517. The ALJ also found Dr. Glassman's assessment was "based solely on the claimant's subjective report of symptoms and limitations" during a period when she "was not taking any medication." *Id.*, citing Tr. 519.

This court finds no error in the ALJ's finding. Numerous medical professionals found Banghart-Brown had a long history of headaches and migraines, so the ALJ was required to find clear and convincing reasons for rejecting the medical opinion of Dr. Glassman. See e.g. Tr. 331-66, 374-80, 383-401, 424-32, 450-55, 490-93, 500, 511-20, 541-42, 566, 596, 580-87, 605. Here, the ALJ reasonably discounted Dr. Glassman's opinion that Banghart-Brown had the severe condition of migraine headaches because treatment notes contained "no objective findings." Tr. 30. At step two, the ALJ reviewed Banghart-Brown's medical records and found her migraines were not severe, noting examinations conducted by Dr. Schreiner in May 2011 and January 2014 were "normal," that marijuana helped relieve Banghart-Brown's symptoms, and a CT scan and MRI of Banghart-Brown from 2011 and 2014 respectively showed "no intracranial abnormality." Tr. 436, 582, 587-89, 605. See *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.")

Additionally, the ALJ reasonably discounted Dr. Glassman's opinion concerning Banghart-Brown's need to lay down in a quiet room from time to time, finding they were "based solely on [Banghart-Brown]'s subjective report of symptoms and limitations," which the ALJ reasonably discredited. See *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal quotation marks omitted) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports

Page 23 - FINDINGS AND RECOMMENDATION

and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.")  This court finds the ALJ's findings reasonable such that there is no error.

### III.  Credit Treating Mental Health Providers

Next, Banghart-Brown argues the ALJ erred by failing to provide germane reasons for rejecting the "other source" opinions of PMHNP William Morris and MA Lisa M. Corallo-Conner.  Pl.'s Br. 17-18.

Evidence from "other sources," including "nurse practitioners, physician's assistants, chiropractors, therapists," "[e]ducational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare workers)," "[p]ublic and private social welfare agency personnel," and other non-medical sources, such as spouses, parents, caregivers, relatives, friends, neighbors, and clergy, may be used to show the severity of a claimant's impairments and how they affect his ability to work.  20 C.F.R. § 416.913(d).  In order to reject evidence from "other sources," the ALJ must give germane reasons for doing so.  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### A. PMHNP William Morris

The ALJ gave "little weight" to PMHNP Morris's[5] October 2013 and December 2013 opinions with respect to Banghart Brown's residual mental functional capacity assessment.  Tr. 30-31.  During that time, PMHNP Morris assessed Global Assessment Functioning (GAF) scores

---

[5]  Plaintiff correctly notes that the ALJ mistakenly referred to PMHNP Morris as a "therapist."  Pl.'s Br. 17.  Despite the ALJ's mistake it does not change the overall analysis which requires the ALJ to provide germane reasons for discrediting the opinion of either a nurse practitioner or a therapist.  See *Molina*, 674 F.3d at 1111.

of 47 and 48, respectively.  Tr. 548, 551.  The ALJ noted these GAF scores suggest "at least

serious symptoms or serious impairment in social, occupational, or school functioning," but

found this opinion was inconsistent with PMHNP Morris's observations of Banghart-Brown that

she had "intact thought process and memory, full orientation, cooperative and calm attitude, and

slightly limited concentration and attention span."  Tr. 31, citing Tr. 547, 551.  Additionally, the

ALJ noted that PMHNP Morris opined that Banghart-Brown's stress was situational and his

opinion "contrasts sharply with the reported activities of daily living."  Tr. 31.

     The ALJ also gave little weight to PMHNP Morris's opinions made in February 2013,

March 2013, and February 2014 finding they "were made when [Banghart-Brown] just began to

receive mental health treatment after a significant period of noncompliance."  Tr. 31.  With

respect to the February 2014 opinion, the ALJ found it was formed closely after Banghart-Brown

had cancelled her appointment with her counselor and admitted to rarely taking Xanax and

Buspirone.  Tr. 31, citing Tr. 577, 580.  Additionally, the ALJ found the 2014 opinion sharply

contrasted with Banghart-Brown's reports of improved mood in January 2014, and PMHNP

Morris's observations of "normal speech, goal-directed associations and thought process, intact

memory, and only fair judgment, 'a bit low' energy level, and 'a bit limited' attention span and

concentration."  Tr. 31, citing Tr. 576.

     This court finds the ALJ provided a germane reason for discounting PMHNP Morris's

opinions.  Indeed, the record supports the ALJ's finding that despite PMHNP Morris's low GAF

scores assigned to Banghart-Brown he still found that her "speech was normal," "thought process

seem[ed] to be grossly intact," "[o]rientation is full," and "[m]emory is grossly intact with some

problems with some retention."  Tr. 566.  Additionally, PMHNP Morris opined that some of

Page 25 - FINDINGS AND RECOMMENDATION

Banghart-Brown's agoraphobic symptoms "might be somewhat selective" given her complaints

of difficulty getting outside for walks, yet having the ability to attend appointments. Tr. 576.

See *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (An ALJ may use inconsistencies

between an other source's opinion and a claimant's activities as a germane reason for rejecting the

other source's opinion.) Finally, although not directly cited by the ALJ, an independent review of

the record shows Banghart-Brown spent a number of years doing horticulture work at Wildlife

Safari despite her alleged limitations, further supporting the ALJ's finding that PMHNP Morris's

opinion was inconsistent with the GAF scores assigned. *See, e.g.*, Tr. 396, 450, 515, 517. This

court finds the ALJ gave a germane reason for rejecting the opinion of PMHNP Morris.

### B.  MA Lisa M. Corallo-Conner

Next, the ALJ gave little weight to MA Corallo-Conner's November 2012 opinion with

respect to Banghart Brown's residual mental functional capacity assessment and GAF score of 42

because it "contrast[ed] sharply with the other evidence of the record." Tr. 31. Specifically, the

ALJ noted that a GAF score of 42 suggested "some impairment in reality testing or

communication or major impairment in several areas, such as work or school, family relations,

judgment, thinking, or mood, or at least some serious symptoms or serious impairment in social

occupational, or school functioning," yet the evidence showed "no more than moderate

restrictions in [her] activities of daily living." Tr. 31-32, citing Tr. 475. The ALJ noted that

other providers found Banghart-Brown had normal mood, and intact memory and judgment. Tr.

32, citing Tr. 484, 488, 492, 495, 504, 510, 513, 519. Additionally, the ALJ found that Banghart-

Brown reported "taking care of household chores, folding laundry, cooking dinner at times,

sewing quilts, shopping in stores, watching television, using computer (sic), and playing video games." Tr. 32, citing Tr. 68, 250-57, 272, 276-77, 451, 506, 518.

The ALJ provided germane reasons for discrediting the opinion of MA Corallo-Conner which are substantiated by the record. As noted by the ALJ, numerous medical providers found Banghart-Brown had a normal mood and intact memory. *See e.g.*, Tr. 484, 488, 492, 495, 504, 510, 513, 519. Additionally, as discussed above, Banghart-Brown both testified and reported that she was able to complete numerous activities of daily living. Tr. 68, 273. As such, this court finds that the ALJ gave a germane reason for rejecting the opinion of therapist Corallo-Conner.

### IV.  New Evidence Submitted to the Appeals Council

Next, Banghart-Brown argues the post-hearing opinion of Dr. Schreiner, the treating neurologist, shows that the ALJ's decision is not supported by substantial evidence. Pl.'s Br. 12-13. On August 3, 2015, Banghart-Brown submitted additional, new evidence to the Appeals Council in connection with her request for review. Tr. 5. This evidence included a Medical Evaluation by Dr. Schreiner, conducted on April 4, 2014, and medical records from the Roseburg Neurology Clinic from March 24, 2014 through April 17, 2014. Tr. 5, 610-19. The Appeals Council denied Banghart-Brown's request for review making the ALJ's decision the final decision of the Commissioner of Social Security. Tr. 1-4. In doing so, the Appeals Council considered Dr. Schreiner's April 4, 2014 evaluation and the additional medical records from the Roseburg Neurology Clinic, finding that this evidence "does not provide a basis for changing the Administrative Law Judge's decision." Tr. 2.

Banghart-Brown notes that Dr. Schreiner found Banghart-Brown's medical conditions would "interfere with her capacity to concentrate, focus and persist on tasks," that she would be unable to maintain a regular work schedule more than four days a month, and that Banghart-Brown should undergo neurocognitive testing to determine "subtle memory problems." Pl.'s Br. 12, citing Tr. 612-13. Therefore, Banghart-Brown argues, if properly credited, Dr. Schreiner's opinion compels "either a finding of disability, or a remand for development of Plaintiff's psychological condition." Pl.'s Br. 13.

"When the Appeals Council considers new evidence in denying a claimant's request for review, the reviewing court considers both the ALJ's decision and the additional evidence submitted to the Council." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n. 2 (9th Cir.2007). The court then considers whether the post-decision evidence undermines or further supports the ALJ's decision. *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

Dr. Schreiner wrote in her April 4, 2014 Medical Evaluation that Banghart-Brown suffered from daily migraine headaches, would need to lay down periodically several times a day due to headaches, and more than four days per month would be unable to maintain a regular work schedule. Tr. 610-13. Additionally, she wrote that Banghart-Brown's condition would interfere with her capacity to concentrate, focus, and persist on tasks, and it was her opinion that neurocognitive testing should be done to "help determine if any subtle memory problems exist." Tr. 612.

After reviewing Dr. Schreiner's April 4, 2014 medical opinion and the record as a whole, this court finds the ALJ's findings are still supported by substantial evidence. Dr. Schreiner reported Banghart-Brown suffered from daily headaches and experienced migraines since age

Page 28 - FINDINGS AND RECOMMENDATION

twelve requiring her to lie down several times a day, yet this report is almost identical to prior

reports from Dr. Schreiner describing Banghart-Brown's migraines. *See e.g.*, Tr. 580-82, 584-87

(medical reports from Dr. Schreiner from May 2011 and January 2014 that describing Banghart-

Brown's history of migraines since age twelve, yet overall finding her examinations to be

normal.)  Additionally, Banghart-Brown continued to do horticulture work at Wildlife Safari in

2011 and 2012, was able to complete numerous activities of daily living, and testified at the

March 5, 2014 to doing all the chores around the house.  Tr. 68, 396, 451, 515, 584.

Additionally, this court rejects Dr. Schreiner's subsequent report because she provides no

additional medical evidence to support her findings, even noting that Banghart Brown's February

2014 MRI showed no cause for headaches, and memory loss testing gave a mini-mental status

score (MMSE) of 28/30 which was within the normal range.  Tr. 610-11.  See *Crane v. Shalala*,

76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected check-off forms that did not contain any

explanation of bases for conclusions).  See also, *Chaudry v. Astrue*, 688 F.3d 661, 671 (9th Cir.

2012) (internal quotation marks omitted) ("The ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory, and inadequately

supported by clinical findings.").  Overall, Dr. Schreiner's report provided no additional

information such that the ALJ's findings were not supported by substantial evidence.  Therefore,

this court finds that Dr. Schreiner's opinion does not show that the ALJ's decision is not

supported by substantial evidence, and there is no error.

### V. Ability to Retain the Ability to Perform "Other Work" in the National Economy

Next, Banghart-Brown argues the Commissioner failed to meet her burden of proving that

she retains the ability to perform "other work" in the national economy.  Pl. 's Br. 18-19.

Page 29 - FINDINGS AND RECOMMENDATION

Essentially, Plaintiff argues that the ALJ's RFC finding and subsequent step five findings are not based on substantial evidence in the record because they did not include the opinions of Dr. Schreiner and Dr. Glassman, whose limitations, if credited, would require a finding that Banghart-Brown is disabled. Pl.'s Br. 18-19.

**A. Banghart-Brown's RFC**

The RFC is the maximum a claimant can do despite her limitations. *See* 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As discussed above, the ALJ reasonably discredited the opinions of Dr. Glassman, PMHNP Morris, and MA Corallo-Conner, and therefore was not required to include their more restrictive functional limitations in Banghart-Brown's RFC. Additionally, this court finds the new evidence submitted to the Appeals Council including a report from Dr. Schreiner do not support a finding of additional functional limitations for Banghart-Brown. The ALJ reasonably assessed Banghart-Brown's RFC assessment with respect to her limitations supported by the medical record and lay witness statements. Tr. 23-32. As Banghart-Brown raises no other issues with the ALJ's RFC assessment, I find no error in the ALJ's RFC assessment.

**B.  Step Five Findings**

At step five, the burden of proof shifts to the Commissioner to demonstrate that the claimant can engage in some type of substantial gainful activity that exists in "significant numbers" in the national economy.  *Yuckert,* 482 U.S. at 141-42.  The step five analysis requires assessment of the medical evidence, the claimant's daily activities, prior work record, functional restrictions and limitations, medication and other treatment for relief of symptoms, and evidence from physicians and third parties. 20 C.F.R. § 416.929.  Typically, the ALJ propounds a hypothetical question to the VE that is based on medical assumptions supported by the record and reflects all of the claimant's limitations.  *Osenbrock,* 240 F.3d at 1163.  If the claimant fails to present evidence that she suffers from certain limitations, the ALJ need not include those alleged impairments in the hypothetical question to the VE. *Id.*

Here, the ALJ propounded a hypothetical to the VE based on the RFC finding.  Tr. 93. Under the hypothetical, the ALJ asked the VE to consider a person with the same work experience, age, academic vocational profile as Banghart-Brown, and "who's (sic) maximum physical exertional capability is light; who's (sic) maximum mental capability is engaging in unskilled; repetitive; routine work; who will have no contact with the public; who will have occasional contact with supervisors; and coworkers; who will be off task at work 7 percent of the time; but still meet minimum production requirements; and who will be absent from work one time per month." *Id.*  Under this hypothetical, the VE identified the positions of mail clerk and office helper.  *Id.*  As discussed above, the ALJ reasonably discredited the opinions of Dr. Glassman, PMHNP Morris, and MA Corallo-Conner when assessing Banghart-Brown's RFC.

Page 31 - FINDINGS AND RECOMMENDATION

Therefore, the hypotheticals propounded to the VE incorporated all of Banghart-Brown's limitations, and this court finds no error.

## VI.  ALJ's Duty to Develop the Record

Finally, Banghart-Brown argues the ALJ failed to develop the record after rejecting her request to order a comprehensive psychological examination.  Pl.'s Br. 19-20.  Banghart-Brown argues the ALJ relied on his own opinion after "rejecting the assessment of the treating therapists and nurse practitioner, despite the lack of any review by an acceptable medical source of Plaintiff's impairments."  Pl.'s Br. 20.

An ALJ in social security cases has a duty to fully and fairly develop the record to assure that the claimant's interests are considered.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  However, the claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).  "No authority suggests that the regulations require the ALJ to continue developing the record until disability is established; the regulations require only that the ALJ assist the claimant in developing a complete record."  *Hampton v. Astrue*, 2009 WL 2351703 at *11 (D. Or. July 27, 2009) (citing *Bowen*, 482 U.S. at 146 (1987)).

Here, the ALJ denied Banghart-Brown's request for a comprehensive psychological examination at the March 5, 2014 hearing finding that there was sufficient evidence in the file and testimony by the claimant to make a disability determination.  Tr. 94.  When making this determination the ALJ noted there was "a lot more...psychologically oriented...evidence in this case" noting Exhibit 10F, the Douglas County Mental Health records from February 19, 2013

Page 32 - FINDINGS AND RECOMMENDATION

through December 23, 2013, noting that it was "current evidence." Tr. 75, citing Tr. 545-72. The ALJ found that a comprehensive psychological examination would only consist of "an interview and possibly looking at some records." Tr. 77.

Banghart-Brown argues, with respect to her mental impairments, that she has only been seen by unrecognized medical sources and this, in combination with GAF scores below 50, and her inability to pay for an additional psychological testing require a comprehensive psychological examination to be done. Pl.'s Br. 19-20, Tr. 75-77. I find this argument unpersuasive. As discussed above, although Banghart-Brown received GAF scores below 50 the ALJ reasonably discredited those opinions. Additionally, I find that the evidence of record is sufficient for the ALJ to determine whether Banghart-Brown suffers from a severe mental impairment. The record included years of medical evidence concerning Banghart-Brown's mental health and there is substantial evidence of numerous doctors describing normal mood and affect, and skepticism regarding the extent of her mental health limitations. Tr. 376, 384, 387, 396, 401, 453, 484, 492, 495, 504, 510, 513, 519, 586. Therefore, this court finds the ALJ did not err by not ordering a comprehensive psychological examination.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying Banghart-Brown's application for disability insurance benefits should be affirmed. A final judgment should be prepared.

Page 33 - FINDINGS AND RECOMMENDATION

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 21st day of November, 2016.

Honorable Paul Papak
United States Magistrate Judge